# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARIE A. CLOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-738-R |
| | ) | |
| CAROLYN W. COLVIN, acting | ) | |
| Commissioner Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Marie Clover (Plaintiff) seeks judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying her application for disability insurance benefits under the Social Security Act. United States District Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Upon careful review of the pleadings, the administrative record (AR), and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

## I. Administrative proceedings.

Plaintiff filed her application with the Social Security Administration (SSA) in February 2010, alleging that back pain, neck pain, scoliosis, hyperthyroidism, and depression have prevented her from working since July

13, 2009. AR 13, 197-98, 212-13. The SSA denied Plaintiff's application at the State agency level. *Id.* at 61-65, 69-72. She challenged that determination by requesting a hearing before an administrative law judge (ALJ). *Id.* at 73-74. Plaintiff, who was represented by counsel, and a vocational expert testified at the requested hearing in November 2011. *Id.* at 33-58.

By written hearing decision in February 2012, *id.* at 13-21, the ALJ found Plaintiff was severely impaired by various impairments but concluded that none of these impairments, alone or in combination, were presumptively disabling. *Id.* at 15-17. He determined that Plaintiff was unable to perform her past relevant work but, nonetheless, retained the capacity to perform other generally available work and, accordingly, was not disabled within the meaning of the Social Security Act. *Id.* at 20-21. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-7, and Plaintiff subsequently sought review of the Commissioner's final decision in this Court. Doc. 1.

## II. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry

to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis.

### A. Standard of review.

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).

**B.     Plaintiff's claims of error.**

Plaintiff raises two claims of error:  (1) "[t]he ALJ failed to properly evaluate the Plaintiff's spinal impairments at step three" and (2) "[t]he ALJ['s] step [five] findings are not substantially supported."  Doc. 14, at 9, 14.[1]

**1.     Whether there is step three error.**

**a.     ALJ's findings.**[2]

•     **Step three.**  Having determined at step two that Plaintiff was severely impaired by status post multiple spinal vertebral fractures and by history of hand pain, the ALJ proceeded to the third step of the analysis and found that those impairments, alone or in combination, did not meet or medically equal "the severity of one of the listed impairments[3] in 20 CFR Part 404, Subpart P, Appendix 1":

The pertinent listing is 1.04.  The listing deals with Disorders of the

---

[1]     Page citations to Plaintiff's Brief opening brief are in sequential order, reflecting this Court's CMECF pagination.

[2]     The ALJ found Plaintiff was severely impaired by both physical and mental impairments.  AR 15.  Plaintiff's claims of error relate only to her physical impairments.  Doc. 14.  Consequently, this report does not address either the ALJ's findings or the evidence – subjective, objective, and opinion – pertaining to Plaintiff's mental impairments.

[3]     "The Listing of Impairments . . . describes for each of the major body systems, impairments that [are] considered severe enough to prevent an [adult] from doing any gainful activity. . . ."  20 C.F.R. § 404.1525(a).

4

spine (e.g. herniated nucleus pulposus, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. The claimant does not have the nerve root compression, spinal arachnoiditis (requiring changes in position or movement more than once every 2 hours), or lumbar spinal stenosis resulting in an inability to ambulate effectively that are the means of meeting or equaling listing requirements.

AR 15-16. Plaintiff's claim of error is confined to this determination. Doc. 14, at 1-11. On judicial review, she does not challenge in any manner the following step four findings by the ALJ. *Id.*

• **Residual Functional Capacity.**[4] Following his consideration of the entire record, the ALJ found

that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally or 10 pounds frequently. In an 8-hour workday, the claimant can stand and/or walk for at least 6 hours or sit for at least 6 hours, all with normal breaks. The claimant can have no constant use of her hands for repetitive tasks such as keyboarding. . . .

AR 17. He then explained the following rationale behind that assessment.

• **Subjective evidence.** In documenting Plaintiff's subjective complaints, the ALJ began with her testimony that she damaged her vertebrae in two motor vehicle accidents – the first in 1997 and the second in September

---

[4]     Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

2008 – and that she gave up office work because she was unable to tolerate the pain in her back and neck caused by sitting. *Id.* at 18, 38-39. She was forty-nine years old when she stopped working on July 13, 2009, her alleged onset of disability date. *Id.* at 13, 18, 20, 38-39, 212-13.

Plaintiff stated that she spends much of her day lying down with a heating pad as a result of the pain in her back. *Id.* at 18, 42. Bending is painful, and she has numbness and pain in her right leg and foot. *Id.* She has difficulty turning her neck from side to side and up and down, making driving difficult. *Id.* at 18, 43. She has arm pain that impacts her wrists and hands, and this limits her to twenty to thirty minutes of keyboarding. *Id.* at 18, 43-44. She cannot open jars due to a weak grip, and she has trouble writing. *Id.* at 18, 44-45. She has day-long migraine headaches twice a month that require her to stay in bed. *Id.* at 18, 45-46.

According to Plaintiff, she is limited to thirty minutes of sitting, fifteen to twenty minutes of standing, two blocks of walking, and one gallon of lifting. *Id.* at 18, 48.

• **Objective and opinion medical evidence.** As to the medical evidence, both objective and opinion, the ALJ found that

> [i]n addition to the injuries she sustained in two automobile accidents, [Plaintiff] was diagnosed with cervical disk and lumbar disk disease with radicular symptomatology. She complained of

chest pain upon neck movement. . . .

[Plaintiff's] motor vehicle accidents occurred in1997 and 2008. A 2006 MRI showed no frank disc herniation, protrusion, or fracture. There was mild to moderate right and left foraminal encroachment lat LL5-S1 and L4-5. In a MRI performed on October 22, 2008, her cervical stenosis was considered mild (Exhibit 15F, p.6). On November 4, 2008, examiner T. Nguyen, M.D. found the claimant's neck supple with full extension, albeit with increased pain upon extension and lateral flexion (Exhibit 13F, p. 2). On February 15, 2009, Phillip Knight, M.D. saw her. He reported a MRI that showed a bulging disc with mild encroachment at L5-S1 and evidence of whiplash injury (Exhibit 16F).

. . . .

On July 8, 2011, an unknown source produced a medical opinion on [Plaintiff's] ability to do work-related physical activities. There was a lifting/carrying ability for 10 pounds occasionally or less than 10 pounds frequently. [Plaintiff] was considered to have about a 3-hour maximum for both standing/walking and sitting. Every 30 minutes, she could be expected to change her postural position between sitting and standing. The unknown source believed [Plaintiff] could occasionally bend, twist, and climb stairs. The source did not think her capable of crouching or climbing ladders (Exhibit 18F).

. . . .

Considerable weight is given the DDS Physical Residual Functional Capacity . . . . Also receiving considerable weight is the consultative evaluation report by George Ashby, M.D (4F). Dr. Ashby's observations of the claimant included the facts that she was involved in daily house chores, that she was able to go outdoors, that she drove a car, and that she did not require an assistive device for ambulation. [Plaintiff] exhibited normal tandem walking and normal heel/toe walking. X-rays of her spine revealed only minor scoliosis and mild narrowing of the L5-S1 disc space. Her right hip had well-conserved joint space with no evidence of sclerotic changes, bony abnormalities, or loose bodies within the joint. In all, Dr.

Ashby saw a normal neurological exam and normal range of motion of the extremities (Exhibit 4F).

The physical residual functional capacity assessment by an unknown source at Exhibit 18F is not given controlling weight, assuming it was from a treating source. It is inconsistent, for example, with Dr. Phillip Knight's report at Exhibit 16F. Dr. Knight found the claimant having the full range of motion of all extremities. There was reduced range of motion of the low back. However, Dr. Knight's conclusion was that [Plaintiff's] combined permanent whole man impairment totaled 14% (Exhibit 16F, p. 4). This relatively low level of impairment does not coincide with the more stringent limitations of Exhibit 18F. In that evidence from an unknown source, [Plaintiff's] impairments are said to be sufficient to keep her from work for about two days each month. Exhibit 18F also gives the claimant the capacities to stand/walk or sit for only about 3 hours during an 8-hour workday. Such limitations are inconsistent with every other medical report.

*Id.* at 18-20.

> • **Credibility.** The ALJ discounted Plaintiff's credibility, pointing to

her testimony that

she can walk for only about 2 blocks at a time. Yet, in a function report, she wrote that she has walked for an hour while grocery shopping (Exhibit 4E, p. 6). She testified she could lift no more than a gallon of milk (about 8 pounds). In her function report, she wrote the limit was 20 pounds(Exhibit 4F).

*Id.* at 19.

Once again, in this claim of error, Plaintiff voices no complaint, factual or legal, to any but the ALJ's step three findings. Doc. 14.[5]

---

[5]    *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) (continued...)

### b.    Evaluation of Plaintiff's claims.

In alleging reversible error at step three, Plaintiff agrees with the ALJ that § 1.04 is the listing implicated by Plaintiff's physical impairments, but she takes issue with his approach in analyzing whether Plaintiff's impairments meet the requirements of that listing. *Id.* at 10. She contends "the ALJ . . . confines his entire 1.04 listing analysis into a single sentence that in fact does not properly quote the 1.04 analysis but erroneously intermingles the three separate and alternative findings under 1.04." *Id.*; *see* AR 16.

To the contrary, the ALJ's analysis is clear, cogent, and readily reviewable. He made a finding that Plaintiff does not have an impairment of such severity that it meets or equals the specifications of listing 1.04, which, according to Plaintiff, is the correct listing. AR 15-16; Doc. 14, at 10. He then explained his finding:  listing 1.04 deals with spinal disorders – *e.g.*, herniated nucleus pulposus; spinal stenosis, osteoarthritis; degenerative disc disease; facet arthritis; vertebral fracture – which result in the compromise of a nerve root or the spinal cord and which require evidence of (1) nerve root compression, (2) spinal arachnoiditis, or (3) lumbar spinal stenosis. AR 16. He further explained, put simply, that Plaintiff "does not have the nerve root compression, spinal

---

[5](...continued)
("[T]heories raised for the first time in objections to the magistrate judge's report are deemed waived.").

arachnoiditis . . . or lumbar spinal stenosis . . . that are the means of meeting or equaling listing requirements." *Id.* Plaintiff complains that "[t]his Court on review is left dangling in the wind wondering as to which of three alternative theories under 1.04 has been considered by the ALJ." Doc. 14, at 11. This is not the case. It is abundantly apparent that the ALJ considered and rejected *each* of the three alternatives.

Plaintiff also contends the ALJ did not "properly recognize and ascertain the Plaintiff's meeting or equaling a disability impairment under the alternative of 1.04 Part A,"[6] the first sub-section of listing 1.04 which requires evidence of nerve root compression. *Id.* at 12.[7] She maintains that "in his step 3 Listing 1.04 analysis, the ALJ makes no mention of and provides no reference to or discussion of <u>any</u> medical evidence of record." *Id.* According to Plaintiff, "[t]he ALJ stated the record showed no evidence of '*nerve root compression*'." *Id.*

---

[6] In order to meet or equal § 1.04A, Plaintiff bears the burden of establishing that she suffers from a disorder of the spine that compromises her spinal cord or a nerve root, along with evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.04.

[7] Plaintiff also asserts that the ALJ erroneously found no evidence of lumbar spinal stenosis. Doc. 14, at 12. But, she makes no claim that her impairments satisfy the second and third sub-sections of listing 1.04 which require evidence of spinal arachnoiditis or lumbar spinal stenosis, respectively.

(emphasis added).[8] She claims this "is factual error and requiring remand." *Id.*

As support for these arguments, Plaintiff generally (and vaguely) refers to her own record citations – "as shown hereinabove" – and submits that "there are repeated objective medical records, diagnostic examinations and tests clearly evidencing *compression upon the spine.*" *Id.* (emphasis added). Her only specific argument is that

> MRI scans confirmed the presence of disc osteophyte complexes causing foraminal narrowing and encroachment (i.e. compression)[9] of the ventral thecal sac and about the ventral surface of the spinal cord at C4-C5 and C5-C6 (AR 323) to the extent that the diameter of the thecal sac of the spine was compressed to 8 cm with normal diameter being 15 - 18 cm. (AR 418 . . .).

*Id.* These arguments break down on several fronts.

Plaintiff's reference to objective evidence "as shown hereinabove" is not sufficient to invoke meaningful judicial review. *Id.* Even as a general matter,

---

[8]  What the ALJ actually found is that Plaintiff "does not have the nerve root compression . . . that [is] the means of meeting or equaling listing impairments." AR 16.

[9]  Plaintiff claims "that foraminal narrowing is an objective medical term meaning 'nerve compression'." Doc. 14, at 6. She quotes authority as stating that foraminal narrowing or stenosis is a spinal condition that can cause symptoms that result from spinal nerve compression. *Id.* This same authority further explainins that "narrowing of the foraminal canals does not necessarily elicit symptoms . . . ." http://www.laserspineinstitute.com/back_problems/foraminal_narrowing/. Rather, the symptoms arise "*if* a nerve root is irritated or compressed . . . ." *Id.* Thus, Plaintiff's authority does *not*, as she suggests, equate formaninal stenosis with nerve compression.

this Court is unable to address contentions for which a claimant fails to develop the factual and legal bases for her arguments. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed"). And, here, Plaintiff is asking the court to draw conclusions on complex medical issues based on a broad-sweeping reference to evidence cited in over seven pages of briefing. Doc. 14, at 5-12. On judicial review, "it is not our role to shore up [Plaintiff's] argument for [her] . . . ." *Chrisman v. Colvin*, 531 F. App'x 893, 896 (10th Cir. 2013) (citation omitted). To compound the difficulty in this case, Plaintiff conflates the distinct concepts of nerve root compression and compression of the spinal cord, faulting the ALJ for not finding "evidence of '*nerve root compression*'" while claiming that objective evidence "as shown hereinabove" establishes "*compression upon the spine*." Doc. 14, at 12.

With respect to Plaintiff's specific argument citing specific MRI scans, *id.* at 12,[10] she does not demonstrate nerve root compression but, rather, encroachment of thecal sac covering the spinal cord. AR 323.

Finally, Plaintiff points to specific evidence which she claims is conclusive

---

[10] Plaintiff asks the court to consider precise medical issues and findings in order to follow her arguments, but she does so with anything but a precise regard for the evidence. Here, she combines findings from a 2006 MRI, AR 323, and a 2008 MRI, *id.* at 418, and refers to the normal diameter of a thecal sac as being 15-18 centimeters – that is, almost six to seven inches. Doc. 14, at 12.

evidence of nerve root compression. Doc. 14, at 12. The following examples demonstrate this is not the case. As objective evidence of neuro-anatomic distribution of pain, Plaintiff relies on her own claim of back and neck pain and right arm and leg numbness along with a 2006 MRI report. *Id.* at 12-13. In addition, because she claims "there is involvement of the lower back," she also relies on specific evidence in order to demonstrate a "positive straight-leg raising test." *Id.* at 13. That evidence is from a physician who saw Plaintiff on complaints of "neck pain, low back pain[, and] radicular symptoms involving her right upper and right lower extremity associated with tingling and numbness." AR 460. On examination, however, the physician found "altered perception of pinprick and touch *in a nondermatomal fashion* in her right upper and right lower extremity." *Id.* at 461.[11] And, with respect to the results of the positive straight-leg raising test, neither of Plaintiff's citations to the record, Doc. 14, at 13, show the results of testing in both the sitting and supine positions required by § 1.04 A. AR 349,[12] 461.

---

[11] This same physician was unable to "demonstrate any focal motor deficit." AR 461.

[12] The examining physician also concluded that there was "[n]o motor weakness or atrophy appreciated." AR 349. As the ALJ put it, "[i]n all, Dr. Ashby saw a normal neurological exam . . . ." *Id.* at 19.

To the extent Plaintiff asserts the ALJ committed *legal* error regarding the lack of nerve root compression evidence, the ALJ's relevant step four discussion and findings belie that argument. *See supra* § III.B.1.a; AR 18-20. To start, Plaintiff does not challenge and, in fact, ignores those step four findings. *See* AR 17-20. Under Tenth Circuit law, when a claimant argues that the ALJ has not made sufficient step three findings, the ALJ's decision can still be affirmed when unchallenged findings made elsewhere in the decision [i.e., at step four] "coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three" such that "[n]o reasonable factfinder could conclude otherwise." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005). Here, the ALJ considered Plaintiff's MRI evidence – including evidence of stenosis – along with examination results – including normal neurological findings – and concluded that she could lift up to twenty pounds and could stand, walk, or sit for up to six hours. AR 17-20. Thus, to the extent Plaintiff claims legal error as to the sufficiency of the ALJ's step three discussion, these findings "conclusively negate the possibility of any finding that Claimant is presumptively disabled under the pertinent listing." *Fischer-Ross*, 431 F.3d at 735.

## 2.     Whether there is step five error.

Plaintiff maintains that her "RFC limited her to light work with 'no

*constant* use of her hands for repetitive tasks such as keyboarding'" and that "[a]t Step 5 the ALJ via his VE found other jobs such as small parts assembler (DOT 706.684-022) and bakery worker (DOT 524.687-022) met this limited RFC." Doc. 14, at 14 (emphasis added). She asserts error, claiming there are unresolved conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT). *Id.* at 14-20.[13]

Plaintiff has not identified any conflicts. The ALJ's *unchallenged* residual functional capacity precludes Plaintiff from performing work requiring the "*constant* use of her hands for repetitive tasks . . . ." AR 17 (emphasis added). As Plaintiff acknowledges, "the ALJ's vocational expert testified on record that this small parts assembly job would require '*frequent* handling and fingering.'" Doc. 14, at 16 (emphasis added). This is entirely consistent with DOT 706.684-022, 1991 WL 679050 (stating handling and fingering are *frequent* activities, defined as from 1/3 to 2/3 of the time, for a small parts assembler). In contrast, a "*constant*[] activity . . . exists 2/3 or more of the time." DOT 706.684-022, 1991 WL 679050 (emphasis added). Thus, the vocational expert's testimony that Plaintiff could perform the work of a small parts assembler was not in conflict

---

[13] The Dictionary of Occupational Titles, published by the Department of Labor, is one of several publications from which the SSA "will take administrative notice of reliable job information." 20 C.F.R. § 405.1566(d)(1).

with the DOT description of that work.[14]

The same holds true with respect to the bakery worker position. As Plaintiff once again acknowledges, "the ALJ's VE testified that the job of bakery worker only has '*occasional*' handling and fingering is 'never.'" Doc. 14, at 17 (emphasis added). Once again, this is entirely consistent with DOT 524.687-022, 1991 WL 674401 (stating handling is an *occasional* activity, defined as existing up to 1/3 of the time, and fingering is an activity that does not exist for a bakery worker). Once again, in contrast, a "*constant*[] activity . . . exists 2/3 or more of the time." DOT 524.687-022, 1991 WL 674401 (emphasis added). Thus, the vocational expert's testimony that Plaintiff could perform the work of a bakery worker was, once again, not in conflict with the DOT description of that work. Plaintiff's claim of error at step five is unavailing.

## IV.    Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by May 14, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely

---

[14] At the outset of his examination, the ALJ directed the vocational expert to advise him "if your testimony varies from the Dictionary of Occupational Titles . . . ." AR 51.

objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 24th day of April, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE